STUART H. FINKELSTEIN, ESQ.

FINKELSTEIN LAW GROUP, PLLC
338 Jericho Turnpike
Syosset, New York 11791
(718) 261-4900

October 15th, 2020

The Honorable Lorna G. Schofield
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square, Courtroom 1106
New York, New York 10007

Re: Antolini vs. 75 & 81 Orchard, et al
Case No.: 1:19-cv-05894 (LGS)

Dear Judge Schofield,

I represent Plaintiff Mr. Antolini in this matter and write in response to defendants' letter, [DE 95]. If I am understanding the thrust of defendants' letter, counsel has regrettably submitted wholly improper papers in total opposition to the rules of this court and all applicable law and fact. It appears that counsel took your June 29, 2020 order [DE 89] and unbelievably interpreted it as a sort of "catch all" for which they were given free rein to throw as much mud up against the wall as possible in the hopes that some of it would stick. Your order gave all parties the opportunity to file any dispositive pre-motion letters at least two weeks before the case management conference to be held on October 22, 2020.

But what sort of motion exactly is counsel writing in anticipation of? There is no reference to any Federal Rule of Civil Procedure, Local Rule for the Southern District, or even your Honor's Individual Rules of Practice. There is no reference made to any actual motion... in a pre-motion letter. Instead, counsel references the unclear concept of a 'sua sponte' motion for an improper expert report without providing some grounds for such a motion. Thankfully, your individual rules clearly lay out, frankly, something that every litigator should know concerning the obvious need to explain the applicable grounds for any motion. *See* Judge Schofield Individual Rule III(A)(i) (pre letter motion... must "identify all of the issues in dispute and explain the legal and other grounds for the motion").

In essence, defendants seek a "sua sponte dismissal" because of an eleven hour and thirty-one-minute delay in receiving Plaintiff's Expert report and because of their issues with the report itself. This would be a truly stunning submission by defendants if it were not in lockstep with their putrid conduct throughout this litigation. So that your Honor is aware, Plaintiff's Expert's report was 11 hours late due to law office internet technical difficulty on the day the report was due. Plaintiff made defendants counsel aware of this and the delay is not tantamount to unfair surprise and/or prejudice to defendants. But defendants, in their disturbing and improper letter, submit to the Court that a federal disability lawsuit should be dismissed because of an hours long delay in receiving an expert's report. This is all against the backdrop of defendants not even submitting their own expert's report, to this very day! It appears that this frivolous and inappropriate pre-motion letter (if we can even call it that) is made to avoid malpractice on their part, as they have essentially precluded their client from asserting a full and complete defense through expert materials and testimony. That was and is their decision. But all of defendant's behavior has been undertaken as

the restaurant Katja is currently operating at full capacity with both indoor and outdoor seating with the ongoing discrimination caused by violations of the Americans with Disabilities Act.

For extreme clarity's sake, this bears repeating. Defendants absconded their responsibilities to their client by not retaining an expert and by failing to provide an expert's report for their client (to this day still no report has been forthcoming). But defendants would have your Honor grant relief, (through an improper pseudo-motion to dismiss) against the party who actually did produce an expert's report because said report was hours late. Wow.

Defendants final argument, that Plaintiff's case should be dismissed because defendants find Plaintiff's expert report to be inadequate is wholly inappropriate and incorrect. This argument is based on no legal standard whatsoever. Defendants write "Plaintiff cannot support his cause of action, or his burden of proof" but cite to no legal standard (i.e. some sort of motion for dismissal or rule laying out any guiding principles). Defendants cite to no case or controlling authority authorizing 'sua sponte dismissal' for an expert's report being disputed during the discovery phase. Rather, they cite to cases that have little to do with what they seek, dismissal. In fact, the case law is actually antithetical to defendant's position on the law and on procedure.

The two main provisions of Title III that mandate facility repairs are (1) the readily achievable standard and/ or (2) fundamental alterations. The 2nd Circuit has codified that "the ADA requires removal of barriers, regardless of whether alterations have been made, **"where such removal is readily achievable**." 42 U.S.C. § 12182(b)(2)(A)(iv).... and (2) "regulations adopted pursuant to the ADA impose access requirements when there have been **material alterations made to public accommodations after January 26, 1992**. *See* 28 C.F.R. §36.402(a).

Addressing (1) the *Readily Achievable standard*, defendants' counsel has put forth false statements of law by asserting that Plaintiff need make prima facie showing during *discovery*, of the plans for barrier removal at the subject facility. This defense lawyer is in clear error of the law concerning the appropriate burden(s) of proof of architectural repairs in Title III cases. This lawsuit is in the discovery phase with a case management conference upcoming, and as such, any burden(s) defendants speak of are not yet in play until the time of trial. See Borkowski v. Valley Central School District, 63 F. 3d 131 (2d Cir. 1995); Roberts v. Royal Atlantic Corp., 542 F. 3d 363 (2d Cir. 2008); Kreisler v. Second Ave. Diner Corp., 2012 WL 3961304 (S.D.N.Y. Sep. 11, 2012) (aff'd 731 F.3d 184 (2d Cir. 2013)). *It is at the time of trial that* commences that Plaintiff's initial burden is simply to put forth his logic concerning those repairs he believes are readily achievable and/or mandated provisions of Title III. Roberts v. Royal Atlantic Corp., at 363. In Roberts, the Second Circuit confirmed that "Plaintiff's minimal burden [at trial] does not require him or her to furnish exact or detailed cost estimates.... "defendants possess superior access to information regarding their own facilities, such as architectural plans and historical and projected costs of repairs... they are typically in a position far more easily to refute plaintiff's position as unreasonable than is plaintiff to prove otherwise.' Borkowski, 63 F. 3d at 131. The burden of persuasion then switches to the defendants to make their claims about all readily achievable modifications. *See* Kreisler 2012 WL 3961304 (explaining the "well settled principle" in affirming that defendants' burden is significantly heavier than Plaintiff's after it shifts). Plaintiff's expert report is on point. It establishes the facts and conclusions of a qualified architectural expert. Defendants may not like what Mr. Chen has written and if same is true, then they are more than able to cross-examine him at trial concerning his findings.

As for the 'Material Alterations' prong, Plaintiff has already made his position known to defendants that in fact the repairs that defendants will be required to make will be 'to the maximum extent feasible.' "42 U.S.C. § 12183(a)(2);" Roberts v. Royal Atlantic Corp., 542 F.

3d 363 (2d Cir. 2008). Maximum extent feasible means "maximum physical accessibility feasible… Any altered features of the facility that can be made accessible shall be made accessible to the maximum extent feasible. **28 C.F.R. § 36.402(c)**." *See* Roberts at 371. "Section 12183's "maximum extent feasible" requirement does not ask the court to make a judgment involving costs and benefits. Instead it requires accessibility except where providing it would be "virtually impossible" in light of the "nature of an existing facility. **28 C.F.R. § 36.402(c)**." Id. The statute and regulations require that such facilities be made accessible even if the cost of doing so—financial or otherwise—is high. Id. Indeed, in promulgating the implementing regulations, the Department explicitly rejected suggestions that cost be considered with respect to this provision. *See* Title III Final Rule, 56 Fed. Reg. at 35, 581." Id. at 372. Defendants maliciously omit crucial facts from the court that Plaintiff's counsel has made note of numerous times; the building at issue was constructed initially in 1910. It has in fact been 'altered' within meaning of 28 C.F.R. §36.402(a) many times since 1992. The repairs that they assuredly will be required to make are extensive and Plaintiff's Expert's report details exactly what sorts of repairs are necessary. Plaintiff's minimal burden has been more than met and whether defendants like it or not, it will be their burden to show more exact and specific details as the Borkowski, Roberts, and Kreisler courts have all made clear.

In defendants' pseudo 'pre-letter motion to dismiss' they seek to anoint themselves the arbiter in determining not only the qualifications of Plaintiff's expert to testify at time of trial, but the contents of his report. The defendants should know that is simply not how it works. *See* F. Civ. P. 26(e) *supplemental/ additional experts' material*; Federal Rules of Evidence 104(a) (whereby it is the trial court's gatekeeping function over expert testimony and making that determination at time of trial, followed by the determination of the jury to determine the weight and credibility of his/her testimony); F.R.E. Rule 702., Committee Notes of Rules 200 Amendment; F.R.E. 703.

Cases are not dismissed sua sponte without any legal standard applied simply because one side claims that the other side has a deficient report. Such contentions are silly at best and frivolous at worst. Without ever having submitted a report on their own behalf, defendants' letter is little more than three pages of hollow and wasteful musings. The time for defendants to put forth their own findings, analysis and conclusions left the barn some time ago. Plaintiff will be guided by your Honor's instructions in preparation for trial.

Thanking you, I remain,

Very truly yours,

Stuart H. Finkelstein

SHF/tc
To all counsel via ECF